# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOUAPHAN PHETCHUMPORN,<br><br>          Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>         Defendant. | ) 1:08-cv-01474-SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (DOC. 2)<br>)<br>) ORDER DIRECTING THE ENTRY OF<br>) JUDGMENT FOR DEFENDANT MICHAEL J.<br>) ASTRUE, COMMISSIONER OF SOCIAL<br>) SECURITY, AND AGAINST PLAINTIFF<br>) BOUAPHAN PHETCHUMPORN<br>) |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application of May 2, 2006,[1] made pursuant to Title XVI of the Social Security Act, for Supplemental Security Income (SSI), in which he alleged he had been disabled since April 1, 1990, due to emotional problems, angering easily, sleeping disorders, nightmares, depression, forgetfulness, and lower back

---

[1] A previous application for benefits resulted in an unfavorable decision dated June 6, 2003, and the Appeals Council denied review. (A.R. 134.) As Defendant notes, it does not appear that in the decision under review, the ALJ applied any presumption of continuing non-disability pursuant to <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988) (A.R. 12-18), and this would be to Plaintiff's benefit. (Brief p. 2 n. 2.)

1

pain. (A.R. 12, 81-93, 82.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the order of Judge Anthony W. Ishii filed on October 22, 2008, the matter has been assigned to the Magistrate Judge to conduct all further proceedings in this case, including entry of final judgment.

The decision under review is that of Social Security Administration (SSA) Administrative Law Judge (ALJ) Bert C. Hoffman, Jr., dated March 20, 2008 (A.R. 12-18), rendered after a hearing held on December 18, 2007, at which Plaintiff appeared and testified with the assistance of a Laotian interpreter and an attorney. (A.R. 12, 33-52).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and thereafter it extended time for Plaintiff to file a civil action until approximately November 8, 2008. (A.R. 2-3.) Plaintiff filed the complaint in this Court on September 23, 2008. Plaintiff's amended opening brief was filed on August 27, 2009, and Defendant's responsive brief was filed on September 11, 2009. Briefing was completed with the filing of Plaintiff's reply brief on September 24, 2009. The matter has been submitted without oral argument to the Magistrate Judge.

I. Jurisdiction

The Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), which provide that an applicant suffering an adverse final determination of the Commissioner of Social Security with respect to SSI benefits after a hearing may obtain judicial review by initiating a civil action in the district court within sixty days

of the mailing of the notice of decision. Title 20 C.F.R. §
422.210 provides that the Appeals Council is authorized to extend
the time for filing a civil action for judicial review of a
decision of the Commissioner. Plaintiff timely filed his
complaint on September 23, 2008, within the period of extended
time granted by the Appeals Council for filing the action.

II. Standard and Scope of Review

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).
Substantial evidence means "more than a mere scintilla,"
Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
(9th Cir. 1975). It is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Richardson, 402 U.S. at 401. The Court must consider the record
as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion; it may
not simply isolate a portion of evidence that supports the
decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).
It is immaterial that the evidence would support a finding
contrary to that reached by the Commissioner; the determination
of the Commissioner as to a factual matter will stand if
supported by substantial evidence because it is the
Commissioner's job, and not the Court's, to resolve conflicts in

3

the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

III. <u>Disability</u>

A. <u>Legal Standards</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th

4

Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific

sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[2]

## B. The ALJ's Findings

The ALJ found that Plaintiff had medically determinable impairments of low back pain and an adjustment disorder, but Plaintiff had no impairment or combination of impairments that significantly limited or was expected to limit significantly his ability to perform basic, work-related activities for twelve consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (A.R. 14.) Accordingly, Plaintiff was not under a disability since May 2, 2006. (A.R. 18.)

---

[2] All references to the Code of Federal Regulations are to the 2008 version unless otherwise stated.

## C. Plaintiff's Contentions

Plaintiff argues that the ALJ failed to provide sufficient credibility findings with a statement of clear and convincing reasons. Plaintiff contends that the treatment record, Plaintiff's statements to consultative examiners, and observations of third parties were consistent with Plaintiff's subjective complaints. The ALJ improperly relied on the absence of objective medical evidence in making his credibility findings.

Further, with respect to the medical evidence, Plaintiff argues that the opinions of Dr. Spindell and the state agency physician, relied upon by the ALJ, did not constitute substantial evidence.

## IV. Medical Evidence

Patient database notes from the office of V.S. Kaleka, M.D., reflect treatment of Plaintiff from 2002 through 2007, with visits of frequency varying from three to six visits annually. (A.R. 156-57.) The notes reflect diagnoses of depression, PTSD, and arthritis in March 2002, with treatment in the form of medications through July 2004. (A.R. 157.) In September 2004, diagnoses of depression, PTSD, and arthritis are recorded, with treatment by medication from 2004 through 2007. (A.R. 156, 186.) Progress notes from Dr. Kaleka's office reflect gaps with treatment periods from September 2004 through September 2006, and between January and November 2007, in which Plaintiff visited about every two months. (A.R. 150-55, 183-86.) On one occasion, no notes were made. (A.R. 155.) On the other occasions, essentially the same notations were made, including pain, tenderness, and stiffness in the joints, muscles, and low back;

insomnia; depression; anxiety; guilt feeling; changes in mood; nightmares; and anxious/depressed mood or affect. The impression was depression, PTSD, arthritis, IFG, asthma, and anemia in 2007. (A.R. 150-54, 183-86.) In 2004 and 2006, the impressions were depression, arthritis, asthma, and PTSD. (A.R. 183-86.) The records reflect that Plaintiff saw a physician's assistant, with a signature by a medical doctor in 2004. (A.R. 186.) In 2007, there were initials of an M.D., but the capacity or involvement of the doctor is unclear. (A.R. 150-54.) The records from Dr. Kaleka's office do not reflect any assessment of Plaintiff's functional capacities.

On August 24, 2006, consulting examiner Dr. Rustom F. Damania, M.D., who was board-eligible in internal medicine, evaluated Plaintiff, who complained of localized, non-radiating body and back pain that was not associated with paresthesias and did not change on coughing or sneezing. (A.R. 194-97.) This had a gradual onset and had been experienced for six years. (A.R. 194.) Plaintiff also complained of chronic pain in the left foot where a bullet went through his foot; he had experienced this since the war. (A.R. 194.) His medications were Prozac, Atarax, and Remeron. He reported doing no household chores.

Plaintiff was in no acute distress or discomfort; he was well-built and well-nourished. Pulse was seventy and regular, and blood pressure was 110 over seventy. He was very cooperative and pleasant; he answered questions and followed instructions. The physical exam was essentially normal. The joints of the upper and lower extremities were all normal. Gross ranges of motions were normal; there was no ankylosis, deformities, contractures, or

subluxations; and there were no signs of acute or chronic inflammation such as tenderness, swelling, crepitations, or redness. The hands were dirty, and there were multiple callouses. (A.R. 195.) Cervical, thoracic, and lumboscral spine were normal with normal range of motion. Gait, reflexes, full squat, and coordination were normal; power was grade 5/5 in both upper and lower extremities; there was no motor or sensory deficiency; and Romberg was negative. (A.R. 196.) The diagnosis was low back pain by history with no clinical evidence of radiculopathy. (A.R. 196.) Dr. Damania opined that Plaintiff should be able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for six hours, and sit without restriction without any further limitations and with no need to use any assistive devices for ambulation. (A.R. 196.)

In September 2006, Plaintiff's blood glucose was high, and hematocrit and hemoglobin were low. (A.R. 176-77.)

On September 15, 2006, consulting psychologist William A. Spindell, Ph.D., reviewed background data and examined Plaintiff in the course of completing a psychological disability evaluation. (A.R. 188-93.) He administered the Bender Gestalt II and TONI-III. Plaintiff reported that he was a father of six who had farmed in Laos and Thailand; he lived in Fresno, where he performed light household activities, did a little farming, took care of whatever he could, and was the non-legal ward of his six children. He tried to do some vegetable work, and his hands clearly showed some "outside wear." An adult daughter cooked and shopped. He watched TV aimlessly, was relatively isolated, had no friends, and communicated only occasionally with an uncle. (A.R.

188.) Plaintiff reported having been exposed to a variety of chemicals in Laos, Thailand, and the San Joaquin Valley. He reported serious musculoskeletal pain in the low back, left leg injury, heart problems, and depression with non-specific complaints. He seemed to be able to understand and carry out one-step and two-step instructions. He had worked until a car accident eight to nine years before.

Plaintiff ambulated reasonably well but slowly. He was appropriately dressed and poorly groomed. He had written language, but it was Laotian. His affect was flat, but he did not appear to be overly depressed. He made poor eye contact and volunteered little information. He could copy drawings with a pencil and look at figures and say what was missing without evidence of pressured speech or neologisms. Remote and recent memory functions were meager but within normal limits. (A.R. 188-89.) The result on the Bender Visual Motor Gestalt II was in the normal zone, with a global score estimated to be about twenty-six, without evidence of angulation, rotation, perseveration, or fragmentation; the profile was not neurologically impaired. (A.R. 189.) On the TONI III, the quotient was calculated at eighty-three, or in the thirteenth percentile in intelligence, or the 70-80 region of mild mental retardation. However, Dr. Spindell opined that this test was extremely unreliable as to persons with Plaintiff's background. (A.R. 189.)

Dr. Spindell's diagnostic impression was adult adjustment disorder with mixed emotional features. (A.R. 189.) Dr. Spindell opined that although isolated, Plaintiff was not clinically depressed; he continued to perform chores around the house and

outside chores associated with backyard farming, and he could
"continue to address the labor market in the capacities that he
is in now." (A.R. 190.) He could not perform detailed and complex
tasks, but he could perform simple, repetitive tasks, maintain
regular attendance and perform activities on a consistent basis
without special supervision, complete normal workdays and
workweeks without interruptions from symptoms, accept
instructions from supervisors and interact with coworkers and the
public, and deal with the usual stresses of competitive work.
(A.R. 191.) He was able to perform activities of daily living,
maintain social relationships, and sustain concentration,
persistence, and pace; he could function outside highly
supportive arrangements. (A.R. 191.) Dr. Spindell further noted
that Plaintiff's isolation was in name only because Plaintiff had
good interaction with his children and occasional interaction
with his male sibling. (A.R. 190.)

In November 2006, non-examining state agency medical
consultant Evelyn Aquino-Caro, M.D., opined that Plaintiff's
affective or adjustment disorder was not severe, and there was
insufficient evidence to substantiate the presence of other
disorders. (A.R. 159-68.) Plaintiff had mild restriction of
activities of daily living, mild difficulties in maintaining
social functioning and concentration, persistence, or pace, and
no episodes of decompensation. (A.R. 16-72.) Plaintiff's
psychiatric condition was not severe. (A.R. 173-75.) Dr. Wesley
G. Jackson, M.D., opined that Plaintiff's physical impairments
were not severe. (A.R. 175.)

In April 2007, non-examining state agency medical

consultants Durell Sharbaugh, M.D., and Allen Middleton, Ph.D., reviewed the prior consultation of November 2006 and concluded that follow-up care records did not reflect any significant changes in the findings or establish a worsening of Plaintiff's condition or functioning; thus, Plaintiff's physical and mental problems continued to be not severe. (A.R. 158-159.)

In September 2007, Plaintiff reported taking Fluoxetine, Hydroxyzine, and Mirtazapine for depression, Naproxen for pain, and Albuteral inhaler for asthma. (A.R. 97.)

V. <u>Plaintiff's Testimony</u>

Plaintiff, born in 1956, had six children between the ages of sixteen and twenty-five; he lived with his wife, three of his children, a son-in-law, and one grandchild. (A.R. 36-38.) He lived in a shack in the back of the house and sometimes slept in the house. He tore papers, burned bonfires, took out trash, straightened out the back yard and the shack, watched TV, and had a stove. He sometimes went to the store with his family. (A.R. 49-51.)

Plaintiff's only schooling was three years of English study at adult school when he arrived in the United States (A.R. 40-41.) He could not say anything but could listen and maybe understand a little; Plaintiff could not retain vocabulary in his memory, and he could only use basic words, buy things at the store, and read road and traffic signs. (A.R. 41.)

He had never worked at all; he never farmed or took care of anyone for money. When asked about his history of yearly earnings in 1997 through 1999 of $8,000 to $9,000 per year, he maintained that he had never worked. (A.R. 42.) He was unable to work

because he was depressed, would get angry easily if someone turned on music or made noise, wanted to fight when he got mad and was violent with his family, could not follow any instructions, had no memory, and had to separate himself from other people, including separating from his family in the house. (A.R. 42, 44-46.) It had been a long time since the family called the police on him. (A.R. 46.) He had backache, one leg that was not good due to bullet wounds, and asthma. (A.R. 44.)

Plaintiff had a police record for involvement in a fight with a friend in 1994 in which Plaintiff beat up the friend for making fun of him. (A.R. 42-43.)

Plaintiff took medication daily to help him not get angry and for sleep; his family gave it to him in the morning and evening. The anger medication prevented him from getting angry. (A.R. 48.) He suffered no side-effects. He used an inhaler for asthma, which he had two to three times a night, and it took care of his asthma. (A.R. 46-48.) His pain medication took his pain away completely. (A.R. 48.)

Plaintiff had seen Dr. Kaleka once; when Plaintiff went to his office, he saw physician's assistant "Bumney," who examined and counseled Plaintiff. (A.R. 48.)

Plaintiff claimed to have a valid California driver's license but then explained that he had not understood the question and admitted that his license had been revoked for failure to pay a fine relating to an inoperative vehicle that had been towed. (A.R. 39-40.)

VI. Plaintiff's Reports

On May 8, 2006, Plaintiff reported with the assistance of

James Phetphouvong that he could not read or write, and his
depression limited him from work because he angered easily, could
not concentrate or think, was forgetful and sad, cried, and
suffered low back pain, a wounded left leg, and heart problems,
which all rendered him disabled as of 1990. (A.R. 139-48.) After
having been a soldier from 1969 through 1975, he was captured and
sent to a labor camp for more than five years, where he was
bitten many times and worked hard for almost ten to twelve hours
a day. He saw many of his friends killed. In 1980, he escaped to
Thailand, and while in the refugee camp he fought back with the
Lao Communist government for ten years. He brought his family to
settle in the United States in 1990. He believed that his mental
problems started when he was captured and put in the camp. His
situation worsened every day. He also reported that he had never
worked. He listed his medications and reported no side-effects.
He had completed only the first grade in school. (Id.)

On August 8, 2006, James Phetphouvong completed an adult
function report concerning Plaintiff, which purported to be in
the first person and to contain Plaintiff's responses to the
queries on the form. (A.R. 126-33.) Plaintiff reported that he
had been a soldier with the CIA in southern Laos from 1969
through 1975 and suffered wounds to both legs. After 1975, he
escaped to Thailand and continued to fight with the Communist
government until 1990, when his family resettled in the USA. His
medications, which then also included Zyprexa for depression,
could help, but his mental condition was worsening and was never
gone from him. His report was otherwise almost identical with
James Phetphouvong's third party function report of the same

14

date. Plaintiff described his daily activities as walking around in the back yard and the house, watching TV, sitting on the sofa, and napping. His nightmares or bad dreams caused difficulty sleeping. Plaintiff reported that he needed help dressing, bathing, caring for his hair, and shaving; he needed to be reminded to groom and to take his medication. He did not cook and could not perform any indoor or outdoor chores. He stated that he could not work because most of the time he had sadness, crying, anger, headache, dizziness, heart problem, and asthma. He went out several times a month with someone else, shopped two to three times a month, and was able to count change but not pay bills, handle a savings account, or use a check book because he had no English. He had no hobbies, but before his problems he had been a hardworking person who fished and hunted and had many friends. He no longer spent time with others; he angered easily, disliked noise, and did not want to talk with others. His condition affected lifting, bending, standing, reaching, walking, kneeling, talking, hearing, climbing stairs, memory and concentration, understanding and following instructions, and getting along with others. He could walk about one-half block without needing to rest for about half an hour. He could not pay attention, did not finish what he started, and did not follow written or spoken instructions. He just let his stress go and took medications, and he was scared about bad dreams after awakening at night. (Id.)

On February 12, 2007, Plaintiff reported in connection with a disability appeal that his depression, memory, weakness in the left leg, and anger had worsened. (A.R. 110-17.) He had also developed difficulty breathing, and shaking. He had no problems

caring for his personal needs. He had previously done farm work, but he was no longer able to do that; he did not want to see anyone, and he was isolated from the community and friends. He reported taking Nabumetone for arthritis pain and Tactinal for pain with no side-effects, Hydroxyzine and Mirtazapine for sleeping with side-effects of drowsiness, and Fluoxetine for depression with a side-effect of drowsiness. (Id.)

In May 2007, Plaintiff reported that the Fluoxetine he took for depression caused side-effects of drowsiness, his Hydroxyzine for anxiety caused drowsiness, the Naproxen caused stomach problems, and the Albuterol caused fatigue. (A.R. 105-07.)

VII. <u>Third Parties' Reports</u>

Plaintiff's daughter, Sychanh Phethumporn, who lived with her parents and took care of them, reported in an undated letter that her father was a soldier for more than five years during the war and sustained a wound on his lower left leg, resulting in a weaker left leg and arm that a Thai doctor had said was disabling. Her father also had a heart problem that was worsening. However, the most serious problem was depression from war and his health problems, and related problems such as weight loss, sleeping ("slipping") disorder, nightmares and bad dreams, sadness, headaches, dizziness, memory loss, fear of noises, and inability to do anything. His daily activities included sitting on the sofa, watching TV but not understanding anything, napping, walking in the back yard, sometimes skipping lunch, eating at night, retiring late, and awakening early. Sometimes Sychanh drove her father and mother to shopping and food shopping. Her father mostly did not care about his life at all, did not want to

see anybody, and sometimes cried out loud for nothing. She stated that it was very hard to take care of both her mother and father, but she tried her best. (A.R. 96.)

James Phetphouvong completed a third party function report on August 8, 2006, in which he stated he had known Plaintiff for more than fifteen years and spent four to five days a week with him. Plaintiff escaped to Thailand after the Viet Nam war in 1975 and fought with the Lao-Communist government for fifteen years before settling in the United States in 1990. Plaintiff's health problems, war depression, homesickness, heart problem, asthma, headache, dizziness, low back pain, and weakness were getting worse. Plaintiff had trouble sleeping and awoke in the middle of the night. He needed help to choose clothing to wear, prompting to bathe, and help with shaving, cleaning, and combing his hair. Plaintiff needed help with taking his medicines. He never cooked and could not perform any indoor or outdoor household chores. Plaintiff could not concentrate on any work. It was reported that Plaintiff spent time in the back yard, rested, watched TV, and walked around. He went out with family members two to three times per month; before his illnesses, he was a hardworking, friendly person with a driver's license who liked to fish and hunt, but now he did nothing. He did not spend time with others; he had problems getting along with family and others because he easily got angry. He had serious low back pain, asthma, heart problems, and sadness, so he could not lift, bend, reach, walk, kneel, talk, hear, climb stairs, use his memory and concentration, understand and follow instructions, or get along with others. He could walk about half a block without needing to rest for a half

an hour before resuming. He could not pay attention for any time at all, did not complete what he started, and did not follow written or spoken instructions. He let his stress go and took medications; his unusual fear was being scared at night upon awakening after a bad dream. Many years ago he needed glasses and a hearing aid, but he never saw a doctor.  (A.R. 118-25.)

VIII.  <u>The ALJ's Findings Concerning Plaintiff's Credibility</u>

Plaintiff argues that the ALJ failed to state clear and convincing reasons for his findings concerning Plaintiff's credibility. Plaintiff contends that the treatment record, Plaintiff's statements to consultative examiners, and observations of third parties were consistent with Plaintiff's subjective complaints. The ALJ improperly relied on the absence of objective medical evidence in making his credibility findings.

A.  <u>Legal Standards</u>

It is established that unless there is affirmative evidence that the applicant is malingering, then where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. <u>Carmickle v. Commissioner, Social Security Administration</u>,, 533 F.3d 1155, 1160 (9th Cir. 2008). In <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007), the court summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th

Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" Morgan, 169 F.3d at 599 (quoting Lester, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." Id. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." Id.

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair, 885 F.2d at 603; see also Thomas, 278 F.3d at 958-59.

Additional factors to be considered in weighing credibility include the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the

claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; S.S.R. 96-7p.

B. <u>Analysis</u>

The ALJ detailed Plaintiff's claims of disability due to a bad leg, depression, anger, violence, inability to remember and follow directions, and dislike of being around people. (A.R. 16.) The ALJ noted that medications helped without adverse side-effects, and that although Plaintiff had no friends, he could watch television, pick up trash, clean the house, and do what he wanted to do. (A.R. 16.) The ALJ then found that although Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by Plaintiff in his testimony and reports, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (A.R. 16.)

As previously noted, the effects and an absence of side-effects of medication are appropriately considered in evaluating Plaintiff's subjective complaints. Here, Plaintiff's own testimony reflected that his medications took care of his symptoms and produced no side-effects. The Court concludes that the ALJ's reasoning concerning Plaintiff's medications helping without side-effects was clear and convincing.

The reasons stated by the ALJ included inconsistencies in Plaintiff's testimony concerning his work history and his earnings records, which showed earnings between 1997 and 1999; Plaintiff's inconsistent testimony concerning having a valid driver's license; and the inconsistency of Plaintiff's claim of never having worked with his hands with the appearance of his

hands as dirty and bearing multiple callouses. (A.R. 16.)

Inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, or internal contradictions in the testimony; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

Here, the record supports the various inconsistencies noted by the ALJ, which permitted an inference of unreliablity. The ALJ's reasoning was clear and convincing.

The ALJ also noted Plaintiff's daily activities. (A.R. 16.) He interpreted the dirt and callouses on Plaintiff's hands as suggesting that Plaintiff engaged in some type of physical activity. (Id.) The ALJ also noted the history of nothing more than routine treatment for vague complaints coupled with Plaintiff's reports of improvement with treatment, and the absence of any record of treatment for heart-related complaints. (Id.) He mentioned the absence of any treating source's imposition or recognition of any functional limitations. (A.R. 16-17.)

In this circuit, valid criteria for evaluating subjective complaints include weak objective support for claims, inconsistent reporting, infrequent treatment, helpful medications, conservative care, and daily activities inconsistent with disability. Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1998). A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Inconsistent reports to various doctors, as reflected in the records, or inconsistencies between a plaintiff's claims and the observations of medical staff, can constitute clear and convincing reasons for discounting claims of incapacity. Morgan v. Commissioner, 169 F.3d 595, 599-600 (9th Cir. 1999). It is permissible to rely upon opinions of physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). A doctor's opinion that a claimant can work is appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995).

With respect to Plaintiff's mental impairment, the ALJ noted the absence of any significant difficulty in activities of daily living, social functioning, or concentration, persistence or pace. (A.R. 17-18.) The totality of the evidence of Plaintiff's daily activities supported the ALJ's reasoning that Plaintiff

functioned productively within the household, took care of his personal needs, did household chores and farming on home property, and engaged in some physical labor despite protestations to the contrary. (A.R. 17.) Dr. Spindell had noted Plaintiff's stable interaction with family and friends; and the ALJ further mentioned the absence of any difficulty in social functioning during consultative exams or during the hearing. (A.R. 18.) Although an ALJ's observations may not be the sole reason for rejecting subjective complaints, S.S.R. 96-7p at 8, an ALJ may use ordinary techniques of credibility evaluation and may consider specific observations of the claimant at the hearing as part of an overall credibility determination. See, Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cri. 2001).

As to concentration, the ALJ noted Plaintiff's concentration in watching television and cleaning, as well as Dr. Spindell's report that Plaintiff was able to understand and carry out one-step and two-step instructions. (A.R. 18.)

The absence of treatment or only routine treatment was also reflected in the record and was validly considered in connection with determining the nature and severity of Plaintiff's symptoms. Further, the ALJ appropriately considered the absence of consistent expert opinion. The ALJ noted the opinion of Dr. Damania that Plaintiff could work and the opinion of Dr. Spindell that was consistent with work activity. (A.R. 16-17.) All these reasons were clear and convincing and were supported by substantial evidence.

Finally, the ALJ relied on the absence of objective evidence of limitations as severe as those claimed by Plaintiff. The ALJ

noted Dr. Damania's finding of an absence of any clinical findings of radiculopathy as well as his observation of dirt and multiple callouses on the hands, suggesting a capacity for physical activity. The ALJ characterized Dr. Damania's opinion of limitation to tasks consistent with medium exertion as based on Plaintiff's allegations of pain and not any objective findings. (A.R. 16.) The normal findings upon Dr. Damania's examination support this reasoning. Further, the reasoning was clear and convincing. Where the record supports an ALJ's rejection of the claimant's credibility as to subjective complaints, the ALJ is free to disregard a doctor's opinion that was premised upon the claimant's subjective complaints. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ noted the absence of any laboratory or x-ray findings to support a finding of a severe physical impairment. Again, the record supports this observation.

In addition to the opinion of consulting, psychological examiner Dr. Spindell, the opinions to which the ALJ gave considerable weight were the consulting examiners' opinions and the state agency consultants' opinions. (A.R. 17.) The basis for this weighing was the ALJ's reasoning that these opinions were consistent with the objective findings of record and not inconsistent with the treatment records. (A.R. 17.) As the foregoing summary of the findings of records demonstrates, there was an absence of objective findings that would have suggested restrictions or functional limitations as severe as those claimed by Plaintiff.

Although the inconsistency of objective findings with

24

subjective claims may not be the sole reason for rejecting subjective complaints of pain, _Light v. Chater_, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, _Moisa v. Barnhart_, 367 F.3d 882, 885 (9th Cir. 2004); _Morgan v. Commissioner_ 169 F.3d 595, 600 (9th Cir. 1999). The ALJ relied on multiple, clear and convincing reasons, and thus his consideration of the inconsistency of objective findings was appropriate.

The ALJ also expressly considered but rejected the third-party reports and the opinions of Plaintiff, but he gave them little weight because they were not entirely consistent with the objective medical findings contained in the record. (A.R. 17.) This reasoning was specific and germane to the witnesses. _Dodrill v. Shalala_, 12 F.3d 915, 918-19 (9th Cir. 1993). It was based on the inconsistency of the medical evidence, which was appropriately considered. _Lewis v. Apfel_, 236 F.3d 503, 511-12 (9th Cir. 2001); _Thomas v. Barnhart_, 278 F.3d 947, 958-59 (9th Cir. 2002).

Plaintiff's reliance upon evidence in the record that would have supported conclusions different from those reached by the ALJ is unavailing. Although there might have been factors supporting Plaintiff's credibility, the ALJ nevertheless articulated clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints. _Cf. Batson v. Commissioner of the Social Security Administration_, 359 F.3d 1190, 1196 (9th Cir. 2004). It is not the role of this Court to redetermine Plaintiff's credibility _de novo_; although evidence supporting an ALJ's conclusions might

also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, this Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 680-81 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

IX. <u>Expert Opinions</u>

Plaintiff attacks the ALJ's conclusion concerning the severity of Plaintiff's impairments as unsupported by substantial evidence.

Plaintiff argues that because there was no functional assessment in the record from Dr. Kaleka or any other treating source, the ALJ erred in not recontacting Dr. Kaleka for him to address Plaintiff's functional limitations, and the ALJ erred in not developing the record in this respect.

Plaintiff also argues that the state agency physician, who in turn relied on the opinions of Dr. Spindell, had not reviewed the entire record because he had not reviewed the additional records from Dr. Kaleka submitted in November 2007 (A.R. 149-57). Thus, such opinion evidence did not constitute substantial evidence.

A. <u>Legal Standards</u>

1. <u>Severity of Impairments</u>

At step two, the Secretary considers if claimant has "an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). This is referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. <u>Id.</u> The step-two inquiry is a de minimis screening device to dispose of groundless claims. <u>Bowen v. Yuckert</u>, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work

27

activities. 20 C.F.R. § 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

## 2. Evaluation of Expert Opinions

The Court defers to the opinion of a treating physician because of a greater opportunity to know and observe the patient as an individual and because the purpose of the employment is to cure the patient. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard a treating physician's opinion whether or not it is contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). For example, an ALJ may reject a treating physician's opinion that is brief and conclusionary in form with little in the way of clinical findings to support its conclusion. Id.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician only if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contradictory opinion of a nontreating but examining physician constitutes substantial evidence, and may be relied upon instead of that of a treating physician, where it is based on independent clinical findings that differ from those of the treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53

F.3d 1035, 1041 (9th Cir. 1995).

3. Duty to Develop the Record

The duty to develop the record arises where the record before the ALJ is ambiguous or inadequate to allow for proper evaluation of the evidence. 20 C.F.R. §§ 404.1512(e) and 416.912(e); Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001).

B. Analysis

First, the Court rejects Plaintiff's contention concerning the need for the ALJ to recontact Dr. Kaleka to obtain a report of functional capacity. It is not necessary for a treating source's functional assessment to be in the record unless the record is unclear or inadequate to permit evaluation of the evidence. Here, the ALJ had multiple assessments of Plaintiff's capacity for basic work activities, and he evaluated those assessments and stated his reasoning; with respect to the state of the record, he did not find any inadequacy or ambiguity. The Court notes that the record was supplemented with additional records from Dr. Kaleka; it is clear that Plaintiff had an opportunity to submit an opinion from Dr. Kaleka but did not do so. As Defendant notes, at this step, it is Plaintiff's burden to provide evidence of disability. The Court concludes that the ALJ did not breach any duty to develop the record.

The fact that Drs. Aquino-Caro, Jackson, Sharbaugh, and Middleton did not have the records of Dr. Kaleka's treatment in 2007 before them when they stated their opinions in November 2006 and April 2007 does not render their opinions insubstantial. One important factor in evaluating an expert opinion is the extent to which an acceptable medical source is familiar with the other

information in the case record; an opinion should be based on the Plaintiff's condition as a whole. 20 C.F.R. § 416.927(d)(6). Also, a more recent opinion may in some circumstances be entitled to greater weight. <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1993). However, here, the opining sources had the earlier records from Dr. Kaleka, and there is nothing in the later batch of records that was inconsistent with the earlier records. Plaintiff does not suggest how the continuation of the same symptom and treatment history could have invalidated the earlier opinions or otherwise brought them into question. The same absence of objective medical signs was reflected in both batches of notes.

To the contrary, the state agency physicians' opinions were based on the focused findings of the consulting examiners. They thus constituted substantial evidence supporting the ALJ's findings that Plaintiff's medically determinable mental and physical impairments were not severe.

X. <u>Disposition</u>

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for

/////

//////////

///////////////

Defendant Michael J. Astrue, Commissioner of Social Security,
and against Plaintiff Bouaphan Phetchumporn.

IT IS SO ORDERED.


Dated:   February 25, 2010                    /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE